

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

TM:EAG/AL  *271 Cadman Plaza East*
F.#2010R00153  *Brooklyn, New York 11201*

January 5, 2012

By Hand Delivery and ECF

The Honorable Kiyo A. Matsumoto
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

> Re: United States v. Scott Fappiano
>     Criminal Docket No. 11-30 (KAM)

Dear Judge Matsumoto:

    The government respectfully submits this letter in anticipation of sentencing in the above-captioned case, which is scheduled for January 20, 2012, at 5:00 p.m., and in response to the defendant's letter dated December 22, 2011. (See Letter of Harlan J. Protass to the Court, dated Dec. 22, 2011 ("Def. Ltr.")). For the reasons set forth below, the government respectfully asks the Court to craft a sentence that is sufficient to serve the goals set forth in 18 U.S.C. § 3553(a)(2) and, in particular, a sentence that specifically reflects the "seriousness of the offense" and "protect[s] the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2)(A) and (C).

I.  Background

    On January 12, 2011, a grand jury in the Eastern District of New York returned an indictment charging the defendant and thirty-eight others with a variety of offenses, including racketeering conspiracy, based on their leadership of, membership in and association with the Colombo organized crime family of La Cosa Nostra (the "Colombo family" and "LCN," respectively). (Docket Entry No. 1).

    In the indictment, the defendant was alleged to be an associate within the Colombo family, and he was charged in Count One with racketeering conspiracy, in violation of 18 U.S.C. § 1962(d), including the following predicate racketeering acts

("RAs"): extortionate collection of credit conspiracy (RA 32) and robbery conspiracy (RA 33). (Id. ¶¶ 16, 18, 83-88). In addition, the defendant was charged in separate counts with extortionate collection of credit conspiracy (Count Thirty-eight) and robbery conspiracy (Count Forty). (Id. ¶¶ 230, 232).

On January 20, 2011, the indictment was unsealed and the defendant was arrested. (Docket Entries Nos. 2, 72). On July 18, 2011, the defendant pleaded guilty, pursuant to a plea agreement, before the Court to Count Thirty-eight. (Docket Entry No. 464; Presentence Investigation Report ("PSR") ¶ 1).

II. Discussion

In light of the unique circumstances presented by this case, the government does not advocate a sentence within the advisory Guidelines range, but respectfully submits that the sentence imposed by the Court should specifically be crafted to reflect the seriousness of the offense and to protect the public from further crimes by the defendant.

   A.   Legal Standard

The Sentencing Guidelines are advisory, not mandatory. United States v. Booker, 543 U.S. 220, 258-60 (2005). However, the Supreme Court held in Booker that sentencing courts must consider the Guidelines in formulating an appropriate sentence. Id. In Gall v. United States, 552 U.S. 38 (2007), the Supreme Court set forth the procedure for sentencing courts to follow in light of Booker:

> [A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark.

Gall, 552 U.S. at 49 (citation omitted). Next, a district court should "consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party. In so doing, [a district court] may not presume that the Guidelines range is reasonable. [A district court] must make an individualized assessment based on the facts presented." Id. at 49-50 (citation and footnote omitted).

B.  The Adjusted Offense Level Is 15 and the Criminal History Category Should Be II

The Probation Department has determined that the adjusted offense level is 17, the defendant is in criminal history category III, and the advisory Guidelines range of imprisonment is 30 to 37 months.[1] (PSR ¶ 86). The government agrees with this determination, except that the government is prepared to move for a two-level decrease in the applicable sentencing range. As the Court is aware, a number of defendants in this case, including the present defendant, have pleaded guilty pursuant to plea agreements in which the government agreed to recommend an additional two-level reduction, pursuant to U.S.S.G. § 5K2.0, to the advisory Guidelines range if all "covered defendants" listed in the plea agreements entered guilty pleas by a certain date and the pleas were accepted by a United States District Judge. Although not all of the "covered defendants" have pleaded guilty, the government moves for a two-level reduction in light of the guilty pleas entered by numerous covered defendants. If the Court accepts the government's recommendation, the adjusted offense level would be 15.

The government further agrees that while the Probation Department correctly calculated the defendant's criminal history category to be III, a criminal history category of III substantially over-represents the seriousness of the defendant's criminal history and the likelihood that the defendant will commit other crimes. (See generally Def. Ltr. at 12-14). Accordingly, the government recommends that the Court reduce the defendant's criminal history category by one category to be category II. If the Court agrees, the advisory Guidelines range would be 21 to 27 months.

C.  The Sentence Must Reflect the Seriousness of the Crime and Protect the Public From the Defendant

As stated above, in light of the unique circumstances presented by this case, and specifically the time the defendant spent imprisoned for a crime he did not commit, the government does not believe a sentence within the advisory Guidelines range is warranted under 18 U.S.C. § 3553(a). However, the government urges the Court to impose a sentence that still reflects the seriousness of the crimes committed by the defendant and protects

---

[1] The advisory Guidelines range of 30 to 77 – rather than 30 to 37 – months listed in the PSR appears to be a typographical error.

the public by adequately deterring the defendant from committing crimes in the future.

### 1.   The Nature and Circumstances of the Offense

The defendant has pleaded guilty to conspiring to use extortionate means to collect a debt in connection with the Colombo family.  This is a serious crime that warrants a serious punishment.  18 U.S.C. § 3553(a)(1).

First, the Colombo family is a dangerous criminal enterprise that uses violence, including murder, to further its interests.  (PSR ¶ 6).  The defendant's criminal association with the Colombo family reflects his commitment to its violent goals and enabled him to commit the offense of conviction.  For example, when the defendant wanted to collect a gambling debt, the defendant requested that a cooperating witness, who had a reputation for using violence in connection with the Colombo family, obtain payment by extortion, that is, through the credible threat of violence.  On a consensual recording made by a cooperating witness in March 2010, the defendant explained:

> I might need you . . . if I do it I'll go to jail . . . spoke to Reynold [Colombo family captain and co-defendant Reynold Maragni] . . .  I want to be diplomatic . . . it gets to the point where he may have to get his fucking leg broken . . . I'll make sure I'm in court somewhere or doing a deposition . . . the last time I was in Punta Cana when they went to get him,[2] he called the cops . . . he seen him coming.

Fappiano later provided the cooperating witness with a slip of yellow paper that listed the debtor's name, business address, mother's address and other identifying information so that the cooperating witness could locate, assault and collect gambling losses owed by the victim.

### 2.   The Defendant's History and Characteristics

The defendant's history and characteristics indicate that he is committed to the Colombo family and its goals.  18 U.S.C. § 3553(a)(1).  As a teenager, the defendant was associated

---

[2]   Records reveal that Fappiano traveled to Punta Cana on November 10, 2007 and returned November 17, 2007.

-4-

with the Colombo family, and after spending over 20 years in jail for the crime he did not commit, the defendant quickly resumed his association with the Colombo family upon his release in 2006.

In addition to the crime to which he pleaded guilty, the defendant committed several other crimes subsequent to his release from custody in 2006. For example, he schemed with members and associates of the Colombo family to assault the ex-husband of his current wife, to commit a violent armed robbery and to distribute marijuana. Fappiano also admitted on a consensual recording that he gave tips about potential robbery targets to a crew of individuals committing home invasions. He further admitted that he had stored some of the tools used in those robberies, but destroyed the evidence after those individuals were arrested. Finally, Fappiano lent out money to the cooperating witness at an exorbitant interest rate and attempted to evade currency reporting requirements by drafting a check to the cooperating witness in the amount of $9,999.

       3.    Reflecting the Seriousness of the Offense, Promoting Respect for the Law and Providing Just Punishment

While the government does not advocate for a sentence within the advisory Guidelines range, the sentence imposed by the Court still must reflect the seriousness of the offense, promote respect for the law and provide just punishment. 18 U.S.C. § 3553(a)(2)(A). As noted above, the defendant committed serious crimes that are critical to the success of organized crime families and that merit a serious punishment.

       4.    Affording Deterrence and Protecting the Public

Finally, the sentence must afford adequate deterrence to criminal conduct and protect the public from further crimes of the defendant. 18 U.S.C. § 3553(a)(2)(B) and (C). "Under section 3553(a)(2)(B), there are two major considerations: specific and general deterrence." United States v. Davis, No. 08-CR-332 (JBW), 2010 WL 1221709, at *2 (E.D.N.Y. Mar. 29, 2010). Specific deterrence is particularly important in this case.

While the government does not contest – or in any way try to minimize – the severe toll imposed on the defendant as a result of his lengthy incarceration for a crime he did not commit, the defendant cannot have a blank check to commit crimes in the future and rely upon his prior incarceration as a means to avoid future incarceration. As it is, the government allowed the defendant to plead guilty to the least severe crime with which he

was charged – despite the fact that there is overwhelming evidence of the defendant's commission of the other crimes with which he was charged, including racketeering conspiracy and robbery conspiracy.

The government respectfully disagrees with the defendant's claim that he has "complete[ly] and unconditional[ly]" accepted responsibility for his crimes and that "there is the lowest probability" that he will commit another crime.[3] (Def. Ltr. at 1, 17). Long-term members and associates of organized criminal enterprises, such as the defendant as an associate of the Colombo crime family, rarely disassociate themselves from the enterprise and its goals. Indeed, the extreme reluctance of members and associates of organized crime to cooperate with law enforcement is emblematic of this overarching loyalty. (The government notes that it offered Fappiano an opportunity to cooperate with law enforcement in part to evaluate the sincerity of the defendant's claims that he did not intend to continue to associate with organized crime, but the defendant declined.) Finally, it bears noting that although the defendant's prior convictions for impaired driving were directly related to his addictions to alcohol, cocaine and other illegal substances, the defendant does not contend - and could not contend - that these addictions contributed <u>in any way</u> to his criminal conduct in connection with organized crime with which he was charged and to one count of which he pleaded guilty. Accordingly, even if the defendant has overcome his addictions, that alone does not provide any assurance that the defendant will not in the future commit crimes in connection with organized crime. Thus, the government respectfully submits that the sentence imposed by the Court should be crafted such that it serves as an adequate deterrent to the defendant.

Should the Court determine to impose a non-incarceratory sentence, the government asks the Court to impose a the maximum term of probation – five years (<u>see</u> 18 U.S.C. § 3561) – and set stringent conditions of probation. Such conditions should include at a minimum that the defendant not associate in any way with felons or members or associates of organized crime; that the defendant perform a significant amount of community service; and that the defendant maintain satisfactory employment. Should the defendant commit a crime in the future or otherwise violate a condition imposed by the Court such as continued

---

[3] The government does not, however, suggest that the defendant is not entitled to receive the three-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a), (b).

association with members or associates of organized crime, a term of probation – as opposed to a term of supervised release – would further allow the Court to "resentence[] the defendant for the crime of conviction mindful that he ha[d] breached the trust placed in him by a probationary sentence." United States v. Verkhoglyad, 516 F.3d 122, 130 n.6 (2d Cir. 2008) (citing 18 U.S.C. § 3564(e) as "noting that 'sentence of probation remains conditional and subject to revocation until its expiration or termination'", id. § 3565(a)(2), (b) as "providing for sentence of probation to be revoked and for 're sentence'" and U.S.S.G. ch. 7, pt. A, intro. comment. 2(a) as "citing § 3565 to support conclusion that, upon finding of probation violation, 'court may continue probation . . . or revoke probation and impose any other sentence that initially could have been imposed [for the underlying crime of conviction]'").

D. The Maximum Fine Is Warranted

As part of any sentence imposed by the Court, the government respectfully requests that the Court impose a significant fine. Should the Court impose a non-incarceratory sentence, the government respectfully urges the Court to impose the maximum fine available by law, $250,000, to achieve the goals of sentencing set forth in 18 U.S.C. § 3553(a)(2). Section 5E1.2(a) of the Guidelines provides that "[t]he court shall impose a fine in all cases, except where the defendant establishes that he is unable to pay and is not likely to become able to pay any fine." In this case, the advisory Guideline range calls for a fine between $4,000 and $40,000. (U.S.S.G. § 5E1.2(c)(3)).

Although the PSR suggests that the defendant can only afford a fine at the low-end of the Guidelines (PSR ¶ 84), the government respectfully disagrees. First, even after the defendant spent nearly $1,000,000 on his residence, the defendant has a significant sum of money remaining in connection with the settlement earned from a lawsuit against the State of New York and stands to earn an additional sum of money in connection with pending litigation. (Id. ¶ 79). Furthermore, the defendant earns a substantial monthly income and is poised to continue to do so if he is not incarcerated. (Id. ¶ 83). Accordingly, the defendant cannot sustain his burden of showing an inability to pay a fine. United States v. Tocco, 135 F.3d 116, 133 (2d Cir. 1998) (defendant bears this burden).

A significant fine is particularly warranted in order to reflect the seriousness of his crime and provide for specific deterrence if the Court imposes a lenient sentence in terms of

the length of incarceration.  While the maximum fine is well over the range set in the advisory Guidelines range, the government respectfully submits that in light of the unique circumstances presented in this case, a severe fine - indeed the most severe fine available - may serve as a means to punish the defendant and attempt to protect the public from future crimes by the defendant.  See 18 U.S.C. § 3572(a) (noting that the factors set forth in Section 3553(a) should be considered in setting a fine).

III. Conclusion

In this case, given all of the facts and circumstances discussed above, the government urges the Court to impose a sentence that reflects the seriousness of the crimes committed by the defendant and adequately protects the public from future crimes by the defendant.  Should the Court impose a non-incarceratory sentence, the government urges the Court to impose the maximum fine available by law, $250,000, in order to achieve the goals of sentencing.

                                Respectfully submitted,

                                LORETTA E. LYNCH
                                United States Attorney

                         By:         /s/
                                Elizabeth A. Geddes
                                Allon Lifshitz
                                Assistant U.S. Attorneys
                                (718) 254-6430/6164

Enclosure

cc:  Clerk of the Court (KAM) (by ECF)
     Harlan Protass, Esq. (by ECF)
     Cheryl Fiorillo, Senior U.S. Probation Officer (by email)